■ JOHN L. BELL, Individually and as Shareholder of NORPCO RESTAURANT, INC. and BUTCHER BLOCK OF ALBANY, INC., Appellant, v DAVID R. WHITE et al., Respondents. [909 NYS2d 798]—

Peters, J.P. Appeals (1) from an order of the Supreme Court (Tomlinson, J.), entered May 28, 2009 in Albany County, which, among other things, denied plaintiff's motion to set aside an appraisal of his shares of defendant Norpco Restaurant, Inc., and (2) from an order of said court, entered February 2, 2010 in Albany County, which awarded defendants counsel fees.

The underlying facts of this action are fully set forth in a prior decision of this Court (*Bell v White*, 55 AD3d 1211 [2008]). Briefly stated, defendant David R. White agreed to purchase plaintiff's 20 shares of stock in defendant Norpco Restaurant, Inc. pursuant to a 2005 stipulation of settlement. The stipulation provided that plaintiff and White were to each select an appraiser to assess the fair market value of the shares and, if the respective appraisers could not agree on a common value, a third appraiser would be selected whose valuation of the stock would be binding. Shortly after entering into the stipulation, plaintiff sought to set it aside; Supreme Court denied plaintiff's motion and granted defendants' motion to enforce the stipulation. In the years that followed, plaintiff again unsuccessfully moved to set aside the stipulation and was twice found in contempt for violating orders requiring his compliance with its terms.

Following plaintiff's unsuccessful appeals (*id.*), the parties' respective appraisers, having failed to reach an agreement as to the fair market value of plaintiff's shares, agreed to the selection of Chris Mellen as the third appraiser. Mellen submitted an appraisal determining that the fair market value of the subject stock was $150,000. Thereafter, by orders to show cause, plaintiff moved to set aside Mellen's appraisal and defendants sought a hearing for the determination of, among other things, an award of counsel fees based on plaintiff's prior contemptuous conduct. At a hearing on the motions, Supreme Court denied plaintiff's motion to set aside the appraisal and, with respect to defendants' application, the parties agreed to submit affidavits and documentary evidence on the issue of which counsel fees defendants were entitled to recover, with plaintiff reserving his right to a hearing on the reasonableness of such fees. Supreme Court ultimately awarded defendants counsel fees in the amount of $64,205.55. Plaintiff now appeals from both the order upholding the appraisal and the order awarding counsel fees.

Plaintiff argues that the appraisal should have been set aside since Mellen improperly appraised the shares according to their fair market value, rather than fair value, and erroneously applied a minority discount. It is well settled that a "stipulation of settlement is a contract subject to the principles of contract interpretation" (*H.K.S. Hunt Club v Town of Claverack*, 222 AD2d 769, 769 [1995], *lv denied* 89 NY2d 804 [1996]; *see Corrigan v Breen*, 241 AD2d 861, 863 [1997]). Where its terms are clear and unambiguous, " 'the parties' intent is to be gleaned from the language of the agreement and whatever may be reasonably implied therefrom' " (*Dudick v Gulyas*, 4 AD3d 604, 606 [2004],

quoting *H.K.S. Hunt Club v Town of Claverack*, 222 AD2d at 769; *see Raymond Corp. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 46 AD3d 1251, 1253 [2007]; *Mayefsky v Mayefsky*, 184 AD2d 954, 955 [1992], *appeal dismissed* 80 NY2d 924 [1992]).

With respect to Mellen's use of fair market value in appraising the shares, the stipulation plainly states that, in the event that the parties' respective appraisers are unable to agree on the "fair market value" of plaintiff's shares, they would agree upon a third appraiser to determine the "fair market value" of such shares. Indeed, Mellen explicitly stated in his report that, "[i]n accordance with the Stipulation, the applicable standard of value . . . is fair market value," and then went on to define the term pursuant to applicable regulations. Although plaintiff argues that it is "readily apparent" that the parties were contemplating a "fair value" standard since that standard is traditionally utilized in determining the value of shares of a closely-held corporation, "our sole function here is to interpret the stipulation of settlement and glean the intent of the parties from the plain language of the stipulation" (*Mayefsky v Mayefsky*, 184 AD2d at 955). As the stipulation unambiguously calls for a determination of the fair market value of plaintiff's shares, plaintiff's contrary interpretation of the parties' intent must be rejected.

We next address plaintiff's assertion that the appraisal must be set aside because Mellen erroneously applied a minority discount in determining the value of the stock. Relying on *Matter of Friedman v Beway Realty Corp.* (87 NY2d 161 [1995]), plaintiff contends that the application of a minority discount in the context of a closely-held corporation is contrary to law. That decision, however, addressed the propriety of applying a minority discount in determining the "fair value" of the shares of dissenting minority shareholders in a close corporation in a proceeding pursuant to the Business Corporation Law (*id.* at 167-169). Here, the principles enunciated in *Friedman* are not controlling since the sale of plaintiff's shares was not effectuated in a proceeding pursuant to the Business Corporation Law, and the parties neither agreed that the valuation of the shares would be made in accordance with the standards of the Business Corporation Law nor did they stipulate that the shares would be valued according to "fair value."

Plaintiff also argues that there was no factual basis for Mellen's application of a lack of control discount to his shares because, pursuant to Norpco's preincorporation agreement, all corporate decisions require unanimous approval of the share-

holders. Although plaintiff is correct that this provision of the preincororation agreement provides a minority shareholder with some level of control—i.e., the ability to unilaterally veto important corporate decisions—a minority shareholder under these circumstances nonetheless still lacks the power to unilaterally direct and compel corporate activity (*see Theophilos v Commissioner Internal Revenue Serv.*, 85 F3d 440, 449-450 [9th Cir 1996]).\* Inasmuch as plaintiff's 20 shares lack this major attribute of control, we find a factual basis for Mellen's application of a minority discount. In any event, appraisers have broad discretion in determining "which of the myriad factors are relevant to a particular valuation and how such factors impact the valuation of the parcel of land, without interference or direction from the court," absent an agreement expressly requiring or precluding consideration of such factors (*New York Overnight Partners v Gordon*, 88 NY2d 716, 721 [1996] [citation omitted]; *see Vitale v Friedman*, 245 AD2d 14, 14 [1997], *lv denied* 92 NY2d 801 [1998]; *201-203 Lexington Ave. Corp. v 205/215 Lexington Ltd. Partnership*, 224 AD2d 183, 184 [1996], *lv denied* 88 NY2d 813 [1996]). Here, there is nothing in the stipulation of settlement dictating the methods to be used by the appraiser or otherwise prohibiting the application of a minority discount in valuing plaintiff's 20 shares. Nor has plaintiff demonstrated that the application of a minority discount under these circumstances constitutes "palpable error" (*Ardsley Constr. Co. v Port Auth. of N.Y. & N.J.*, 54 NY2d 876, 877 [1981]; *see Kroboth v Brent*, 262 AD2d 837, 838 [1999], *lv dismissed* 94 NY2d 838 [1999]). As plaintiff's mere disagreement with the factors employed does not provide a basis for judicial intervention (*see Rice v Ritz Assoc.*, 88 AD2d 513, 514 [1982], *affd* 58 NY2d 923 [1983]; *201-203 Lexington Ave. Corp. v 205/215 Lexington Ltd. Partnership*, 224 AD2d at 184), Supreme Court properly declined to set aside the appraisal on this basis as well.

Turning to plaintiff's challenge to Supreme Court's award of counsel fees, it is well settled that "[c]ounsel fees that are documented and directly related to contemptuous conduct are generally recoverable unless proven excessive or reduced in a court's reasoned decision" (*Matter of Evans v Board of Assessment Review of Town of Catskill*, 300 AD2d 768, 768-769 [2002];

---

\* " 'Control means that, because of the interest owned, the shareholder can *unilaterally* direct corporate action, select management, decide the amount of distribution, rearrange the corporation's capital structure, and decide whether to liquidate, merge, or sell assets' " (*Theophilos v Commissioner Internal Revenue Serv.*, 85 F3d at 449, quoting *Estate of Newhouse v Commissioner of Internal Revenue*, 94 TC 193, 251-252 [1990]; *accord Estate of Godley v Commissioner of Internal Revenue*, 286 F3d 210, 215 [4th Cir 2002]).

*see* Judiciary Law § 773; *Matter of Lembo v Mayendia-Valdes*, 293 AD2d 789, 790 [2002]). Approximately a year after Supreme Court's June 2006 order enforcing the stipulation, plaintiff was found in contempt for failing to comply with the terms of the stipulation and was given 30 days to purge himself of the contempt. Despite this directive, plaintiff continued to disregard certain provisions of the stipulation, made yet another motion to vacate the stipulation and, in May 2008, was again found in contempt. The reasonable counsel fees and disbursements incurred by defendants in bringing the contempt applications and opposing plaintiff's second motion to vacate the stipulation, as well as those incurred in defending the appeals from the orders resolving those motions, are recoverable as directly related to the contemptuous conduct (*see Data-Track Account Servs., Inc. v Lee*, 15 AD3d 962, 963 [2005]; *Matter of Ahmad v Naviwala*, 14 AD3d 819, 820-821 [2005], *lv dismissed* 5 NY3d 783 [2005]; *Children's Vil. v Greenburgh Eleven Teachers' Union Fedn. of Teachers, Local 1532, AFT, AFL-CIO*, 249 AD2d 435, 435 [1998]). So too are the reasonable counsel fees and disbursements incurred with respect to the fee application itself (*see Data-Track Account Servs., Inc. v Lee*, 15 AD3d at 963; *see also Podhorecki v Lauer's Furniture Stores*, 201 AD2d 947, 947 [1994]). Thus, Supreme Court's determination regarding the scope of the counsel fees that defendants may recover was proper.

We do, however, agree with plaintiff's assertion that Supreme Court erred in making its award of counsel fees without providing him the opportunity for a hearing to inquire into the reasonableness of those fees. During the hearing on defendants' application, plaintiff argued that some of the claimed fees were not related to the contemptuous conduct and, therefore, were not recoverable. The parties stipulated that this issue would be decided by the court upon written submissions; however, plaintiff specifically reserved the right to request a hearing as to the reasonableness of the services for which counsel fees were sought. Accordingly, the parties and Supreme Court agreed that the court would first rule on the issue of which fees could be legally recoverable and, within 15 days of the court's communication of its decision, plaintiff would have the right to request a hearing on the reasonableness of any of those fees. Despite this agreement, Supreme Court issued its order deciding both issues, thereby denying plaintiff his right to inquire into the reasonableness of the fees in violation of the parties' stipulation. As such, the matter must be remitted and plaintiff provided an opportunity for a hearing on this issue.

Spain, Malone Jr., Stein and Egan Jr., JJ., concur. Ordered

that the order entered May 28, 2009 is affirmed, without costs. Ordered that the order entered February 2, 2010 is modified, on the law, without costs, by reversing so much thereof as awarded defendants counsel fees in the amount of $64,205.55; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.